UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MONTAGUE MINNIFIELD** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 2:16-cv-00196-MHH |
| } | |
| **CITY OF BIRMINGHAM,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

The Court returns to this employment discrimination and retaliation case to take a closer look at the City's motion for summary judgment. We start as we did previously: Montague Minnifield worked as a police officer for the Birmingham Police Department. According to Officer Minnifield, who is Black, the City of Birmingham and Sergeant Heath Boackle discriminated against him based on his race and retaliated against him for filing multiple internal grievances and charges of discrimination with the EEOC by refusing to appoint him to a 2013 K-9 patrol position in the BPD's Tactical Unit. Officer Minnifield has asserted Title VII claims of disparate treatment and retaliation against the City.[1]

---

[1] Officer Minnifield also asserted a Title VII hostile work environment claim and § 1981 claims against the City. The Court resolved those claims in favor of the City on the City's first motion for summary judgment. (Doc. 70).

1

Officer Minnifield also asserted claims against Sergeant Boackle in his individual capacity. The Court entered judgment for Sergeant Boackle on the merits of some of the claims against him but denied his motion for summary judgment on the merits and on the basis of qualified immunity with respect to Officer Minnifield's § 1983 claims for disparate treatment and retaliation in violation of § 1981, to the extent the claims were based on the failure to appoint him to a 2013 K-9 patrol position. (Doc. 70, pp. 43–44; Doc. 84, pp. 2–8). Sergeant Boackle successfully challenged this Court's ruling on qualified immunity in the Eleventh Circuit Court of Appeals, so the Court entered judgment in his favor on all of Officer Minnifield's claims. (Doc. 103).

Relying on the Eleventh Circuit's decision in Sergeant Boackle's appeal, the City has renewed its motion for summary judgment, arguing that Officer Minnifield's claims against the City fail as a matter of law because Officer Minnifield cannot demonstrate that he suffered an adverse employment action. (Doc. 108).[2] As the Court previously explained, to prevail on his disparate treatment and retaliation claims, Officer Minnifield must prove that he suffered an adverse employment action. *Maynard v. Bd. of Regents of Div. of Univs. of Fla. Dept. of Educ.*, 342 F.3d 1281, 1289 (11th Cir. 2003) (Title VII disparate treatment); *Thomas*

---

[2] A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

2

*v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1363 (11th Cir. 2007) (Title VII retaliation); *see also Minnifield v. City of Birmingham Dep't of Police*, 791 Fed. Appx. 86, 90 (11th Cir. 2019). Applying the two-part test for qualified immunity, the Eleventh Circuit held that Sergeant Boackle was immune from Officer Minnifield's claims against him because "Sergeant Boackle was acting within the scope of his discretionary authority when he recommended officers for a vacant position within BPD" and because "[t]he law did not clearly establish that Sergeant Boackle's conduct" in declining to recommend Officer Minnifield for a vacant K-9 patrol position "constituted an adverse employment action, under either the disparate treatment or retaliation standard." *Minnifield*, 791 Fed. Appx. at 90, 93. In reaching its decision, the Eleventh Circuit found that Officer Minnifield was seeking only a lateral transfer, that the only difference between the position that Officer Minnifield held as a motorscout and the position that he wanted as a K-9 patrol officer was prestige, and that "Officer Minnifield cannot argue that he suffered an adverse employment action because Sergeant Boackle's refusal to recommend him for a lateral transfer foreclosed his opportunity to apply for <u>yet another</u> lateral transfer." *Minnifield*, 791 Fed. Appx. at 93 (emphasis in *Minnifield*).

The City argues that this final statement from the Eleventh Circuit is the law of the case, and the statement dooms Officer Minnifield's ability to prove his Title VII claims against the City. Under the law of the case doctrine, "findings of fact and

3

conclusions of law by an appellate court are generally binding in all subsequent proceedings in the same case in the trial court or on a later appeal." *Transamerica Leasing, Inc. v. Inst. of London Underwriters*, 430 F.3d 1326, 1331 (11th Cir. 2005). On remand, a district court may address an issue that was not "determined, explicitly or by necessary implication" on the appeal in the case, but a district court must follow the broad import of the appellate holding unless the evidence on remand shifts substantially. *Transamerica Leasing*, 430 F.3d at 1332; *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1283 (11th Cir. 2005).

Officer Minnifield argues that the Eleventh Circuit did not have to decide whether his request for a lateral transfer was an adverse action to hold that Sergeant Boackle was entitled to qualified immunity; the Court of Appeals had to decide only whether, when Sergeant Boackle refused to recommend Officer Minnifield for the K-9 patrol position, binding precedent clearly established that the refusal was an adverse employment action. (Doc. 110, pp. 17–20). That is a fair statement of the second part of the test for qualified immunity, but it does not alter the fact that, if not explicitly, the Eleventh Circuit determined by necessary implication that Officer Minnifield did not suffer an adverse employment action when Sergeant Boackle denied him the K-9 patrol position. That finding is binding on this Court under the law of the case doctrine.

4

Officer Minnifield also argues that in *Doe v. DeKalb Cnty. Sch. Dist.*, 145 F.3d 1441 (11th Cir. 1998), a binding ADA decision that preceded the interlocutory appeal in this case, the Eleventh Circuit found that a loss of prestige relating to a lateral transfer may support a finding of an adverse employment action. (Doc. 110, p. 19).[3] That is a fair statement of the holding in *Doe*. In *Doe,* the plaintiff, a special education teacher, was transferred from a classroom for students with "the most severe behavioral problems" to a classroom for students with "mild disorders." 145 F.3d at 1443. The plaintiff "spent the months after his transfer trying to convince the District to return him to his psychoeducation class," the classroom with students with severe behavioral problems. 145 F.3d at 1444.

The Eleventh Circuit explained the significance of the lateral transfer this way:

> Although Doe would prefer to teach a psychoeducational rather than an interrelated class, his transfer does not appear to represent a demotion. Doe's salary, benefits, and seniority all remain the same. Doe also enjoys the same relative level of prestige within the school system and the larger community. In addition, while Doe lacks a certificate from the State of Georgia in interrelated teaching, his transfer does not seem likely to render obsolete his investment in his own education. Although Doe's teaching experience has focused on psychoeducation, he does not have a particularly specialized educational background. Doe holds a bachelor's degree in psychology from New York University and a Master's degree in special education from Georgia State University.

---

[3] In *Doe*, the Eleventh Circuit held that "the same 'adverse employment action' concept" applies in Title VII, ADEA, and ADA cases. *Doe*, 145 F.3d at 1448.

5

> Doe, however, does have a Georgia certificate in psychoeducational teaching but not in interrelated instruction. To obtain an interrelated certificate, Doe would have to complete ten credit hours of coursework. In order to reduce any inconvenience this additional study might pose to Doe, the District has allowed Doe three years to become certified and promised to pay his educational expenses. In addition, the District has suggested that Doe might be able to count his ten hours concerning interrelated teaching toward the continuing education total that he would have to achieve in any case to retain his current certification, though this point is not clear in the current record. Even without the interrelated certificate, Doe appears qualified to teach an interrelated class, since his interrelated pupils suffer from the same sort of disorders as his previous psychoeducational students—his new students are just easier to teach because they are less prone to misbehavior. As Doe concedes, his new interrelated position is less stressful. Significantly, Doe also agrees with the District that he will be more marketable as an interrelated teacher (once he obtains his certificate), with more long term career opportunities, than he was before his transfer.

145 F.3d at 1444. On this record, the school district argued that it had not "unlawfully 'discriminated' against" the plaintiff because a reasonable person in the plaintiff's position would not view his transfer as an adverse employment action. 145 F.3d at 1447. Based on the evidence presented in a bench trial, the district court disagreed, found that the plaintiff had suffered an adverse employment action, and directed the school district to reinstate the plaintiff as a psychoeducational instructor. 145 F.3d at 1445.

To review the district court's decision, the Eleventh Circuit first considered whether it could weigh a plaintiff's subjective view of a lateral transfer in determining whether the transfer constituted an adverse employment action. In doing so, the Court of Appeals explained:

> in most employment discrimination cases the issue of a plaintiff's subjective preference need not arise, because the plaintiff has alleged an employment action that would appear adverse to any reasonable person. Where a plaintiff has allegedly suffered termination, demotion, reduction in pay, loss of prestige, or diminishment of responsibilities, for example, a court normally has no cause to consider its standard for adversity; the relevant question in such cases is whether such patently adverse actions actually took place.

*Doe*, 145 F.3d at 1448. Thus, the Eleventh Circuit included within its list of "patently adverse actions" a "loss of prestige." But the Eleventh Circuit also adopted an objective test for assessing employment actions and recognized that "'[t]he clear trend of authority is to hold that' a purely lateral transfer is not an adverse employment action. *Ledergerber v. Stangler,* 122 F.3d 1142, 1144 (8th Cir. 1997)." *Doe*, 145 F.3d at 1450. Like the panel in *Minnifield*, the panel in *Doe* held that for a lateral transfer to count as an adverse employment action, there must be an objective component to the transfer that made the new position resemble a demotion. 145 F.3d at 1450, *see also Minnifield*, 791 Fed. Appx. at 92-93.[4] The Eleventh

---

[4] The Eleventh Circuit reiterated this proposition at least twice between its decision in *Doe* and its decision in *Minnifield*. *See Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1245 (11th Cir. 2001) ("[A]pplying the adverse action requirement carefully is especially important when the

7

Circuit cited, by way of example, *de la Cruz v. New York City Human Resources Admin. Dep't of Soc. Serv.*, finding that the transfer in that Title VII case was actionable because it resulted "in lessened prestige and professional growth." *Doe*, 145 F.3d at 1450 (citing 82 F.3d 16, 21 (2d Cir. 1996)).

---

plaintiff's claim is predicated on his disagreement with his employer's reassignment of job tasks. Courts elsewhere have been reluctant to hold that changes in job duties amount to adverse employment action when unaccompanied by any tangible harm."), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)); *Trask v. Sec'y, Dep't of Veterans Affairs*, 822 F.3d 1179, 1194 (11th Cir. 2016) ("A work reassignment may constitute an adverse employment action when the change is 'so substantial and material that it … alter[s] the terms, conditions, and privileges of employment.' Here, the plaintiffs' reassignment resulted in no decrease in pay or grade. And while the plaintiffs offered some subjective evidence that the float pharmacist position involved decreased responsibility and prestige and required the performance of more menial tasks, it is not clear that these changes were so substantial that they amounted to an actionable adverse employment action.") (quoting *Davis*, 245 F.3d at 1245), *abrogated on other grounds by Babb v. Wilkie*, 140 S. Ct. 1168 (2020), *abrogation recognized by Babb v. Sec'y, Dep't of Veterans Affairs*, 992 F.3d 1193, 1196 (11th Cir. 2021). In *Davis*, Eleventh Circuit noted: "We do not suggest that a change in work assignments can never by itself give rise to a Title VII claim; in unusual instances the change may be so substantial and material that it does indeed alter the 'terms, conditions, or privileges' of employment." *Davis*, 245 F.3d at 1245. The Eleventh Circuit also stated: "Work assignment claims strike at the very heart of an employer's business judgment and expertise because they challenge an employer's ability to allocate its assets in response to shifting and competing market priorities. The same concern exists for public entities such as the Town's Police Department, which must balance limited personnel resources with the wide variety of critically important and challenging tasks expected of them by the public." *Davis*, 245 F.3d at 1244.

To determine whether the City's failure to offer Officer Minnifield the K-9 patrol position was an adverse action, the Court must consider whether there are objective factors that would make the transfer from motorscout to K-9 patrol officer "equivalent, at least to some degree, to" a promotion. In other words, Officer Minnifield does not complain that he was moved to a new position with fewer and less prestigious responsibilities but that he already held such a position and that the City deprived him of a more prestigious position based on his race and in retaliation for his previous opposition to race-based conduct in the BPD. *Doe*, 145 F.3d at 1450. Therefore, the Court must determine whether Officer Minnifield's evidence establishes that a transfer from motorscout to K-9 patrol is the objective equivalence, in some degree, of a promotion.

8

In *de la Cruz*, the employer transferred the plaintiff, a Puerto Rican employee, from the adoption unit to the foster care unit of New York City's Department of Social Services. The transfer did not affect the plaintiff's salary, but he argued that he experienced an adverse employment action because the defendants "moved him from an 'elite' division of DSS, which provided prestige and opportunity for advancement, to a less prestigious unit with little opportunity for professional growth." 82 F.3d at 21. The Second Circuit stated: "Although de la Cruz's case is in this respect quite thin, the transfer arguably altered the terms and conditions of his employment in a negative way. This is sufficient to satisfy the third prong of the *McDonnell Douglas prima facie* test." 82 F.3d at 21. The Court of Appeals held: "The question of whether de la Cruz has been harmed by the transfer would be a question of fact for trial." 82 F.3d at 21. Ultimately, the Second Circuit affirmed the district court's judgment in favor of the defendants because the plaintiff did not identify disputed evidence to support the pretext element of his Title VII discrimination claim. 82 F.3d at 23.

Relying on *de la Cruz* and a Third Circuit decision, *Torre v. Casio, Inc.*, 42 F.3d 825 (3d Cir. 1994), the Eleventh Circuit in *Doe* selected an objective test for adversity and held that under the objective standard, "[t]ransfers that result in lesser pay, responsibilities, or prestige will still be 'adverse.' So, too, will transfers that involve arduous travel or that impede an employee's professional growth or

9

advancement." 145 F.3d at 1452 (citations omitted). With respect to prestige, the Eleventh Circuit observed:

> loss of prestige, either within an organization or with regard to the general public, is an objective factor that a court should consider as part of the reasonable person test. *Cf. de la Cruz,* 82 F.3d at 21. Beyond the loss of prestige itself (a reasonable if egoistic employee goal much like salary or promotion), diminishment of prestige may also affect an employee's marketability, another significant objective factor.

*Doe*, 145 F.3d at 1452 n.19.[5] The Eleventh Circuit summed up its holding in *Doe* this way: "In other words, our reasonable person standard will continue to protect disabled employees from transfers that are a form of demotion or that disrupt investment in education, training, or seniority." 145 F.3d at 1452. The Eleventh Circuit also held that the adversity associated with a transfer "must be material; it is not enough that a transfer imposes some *de minimis* inconvenience or alteration of responsibilities." 145 F.3d at 1453.

---

[5] Citing *Rodriguez v. Board of Educ. of Eastchester Union Free Sch. Dist.,* 620 F.2d 362 (2d Cir. 1980), the Eleventh Circuit noted that "transfer from a middle to an elementary school might also be thought to involve a significant loss of prestige, and perhaps long-term prospects for advancement in the art education field as well." 145 F.3d at 1453 n.20.

Because the *Doe* case was on appeal from a verdict in a bench trial, the Eleventh Circuit remanded the case to the district court for additional findings of fact relating to adversity. With respect to that factfinding, the Court of Appeals observed:

> the following would seem to be relevant: what is entailed in the coursework required for certification in the new position; would such additional certification increase Doe's career opportunities, and, if so, was such additional certification and resulting increase in opportunities available to Doe in any event, or was this available to Doe only because of the transfer; whether the District's action would in effect limit Doe's opportunities in this school district to the teaching of interrelated classes, and/or foreclose other opportunities, and, if so, whether the same would adversely affect Doe's employment opportunities or status within either this particular school district or the field of special education generally . . .

145 F.3d at 1453 n.22.

The Eleventh Circuit concluded its opinion in *Doe* by classifying the issue of adversity as a question of fact:

> It is important not to make a federal case out of a transfer that is *de minimis,* causing no objective harm and reflecting a mere chip-on-the-shoulder complaint. However, it is equally important that the threshold for what constitutes an adverse employment action not be elevated artificially, because an employer's action, to the extent that it is deemed not to rise to the level of an adverse employment action, is removed completely from any scrutiny for discrimination. In other words, where the cause or motivation for the employer's action was clearly its employee's disability, a finding that the action does not rise to the level of an adverse employment action means that the action is not scrutinized for discrimination. An artificially high threshold for what constitutes an adverse employment action would undermine the purposes of the statute by permitting discriminatory actions to escape

11

scrutiny. We believe that the purposes of the statute are appropriately served by requiring the fact finder to determine whether a reasonable person would consider the action adverse under all the facts and circumstances.

145 F.3d at 1453 n.21.

In its first opinion in this case, the Court, viewing the facts available to it in the light most favorable to Officer Minnifield, concluded that "the K-9 position was a coveted promotion in all respects except for salary," that the K-9 position was "an exclusive position that rarely posted vacancies," and that the pool of officers vying for the position was competitive. (Doc. 70, pp. 25–26).  The Court cited Sergeant Boackle's testimony that handling a K-9 is "the most liab[le] thing a police department especially here in Birmingham, Alabama has to offer."  (Doc. 70, p. 26) (citing Doc. 58-5, p. 129).  The Court also described the efforts that Officer Minnifield had taken to be admitted to the BPD's Tactical Unit and then receive promotions within the unit.  (Doc. 70, pp. 3–5).  The Court found that this evidence, viewed in the light most favorable to Officer Minnifield, created a question of fact concerning adversity.[6]

The Eleventh Circuit disagreed and reversed.  The Court of Appeals found that the K-9 position "offered no materially improved work conditions" and that the position was "materially similar in all respects" to Officer Minnifield's motorscout

---

[6] The Court noted that in 2013, Sergeant Boackle recommended five white officers for BPD K-9 positions, and Chief Roper selected three of the officers for K-9 positions.  (Doc. 70, p. 9).

position "but prestige." *Minnifield*, 791 Fed. Appx. at 88, 92.  The Court of Appeals stated:  "Officer Minnifield's claim therefore reduces to Sergeant Boackle declining to recommend him for lateral transfer to a position offering the same pay but more prestige." *Minnifield*, 791 Fed. Appx. at 91.  The Eleventh Circuit observed:  "There is no evidence that Officer Minnifield was denied an <u>increase</u> in pay because he did not receive either a patrol or airport K-9 position." *Minnifield*, 791 Fed. Appx. at 91 (emphasis in *Minnifield*).  Those findings are binding on this Court, and the Court must abide by them.

Citing *Heathcoat v. Potts*, Officer Minnifield argues that there is an exception to the law of the case rule "when [] a subsequent trial produces substantially different evidence," and "the trial of this case could bring out substantial different facts . . . such as the fact that the TSA-k-9 position was a federal position with different benefits than the benefits from the city."  (Doc. 110, pp. 16, 20) (citing 905 F.2d 367, 371 (11th Cir. 1990)).  The "substantially different evidence" exception to the law of the case rule applies when a new panel of appellate judges reviews a case on a successive appeal.  905 F.2d at 371 ("This court has identified three circumstances in which the law of the case doctrine will not preclude a later panel from addressing an issue decided on a prior appeal.").  Here, for Officer Minnifield to develop a record containing "substantially different evidence," he would have to identify new facts, via an affidavit or another tool, that would allow him to prove that an

13

appointment to a BPD K-9 patrol position would have opened the door to a TSA K-9 position which, in turn, would have offered improved benefits. He has not done so.

The evidentiary record before the Court now is identical to the record that the Eleventh Circuit had before it when it decided Sergeant Boackle's interlocutory appeal. That record indicates that BPD K-9 patrol officers and TSA K-9 officers are part of BPD's Tactical Unit. (Doc. 57-10, p. 1; Doc. 57-11, p. 1). The record suggests that BPD may receive federal resources to help sponsor TSA K-9 units, but BPD tries to use the TSA resources in conjunction with BPD K-9 patrol units, not TSA K-9 units. (Doc. 57-22, p. 1).[7] The Court has not found in the record evidence that indicates how often, if at all, the BPD Tactical Unit contains TSA K-9 officers and how those officers' positions are funded. It is conceivable that either the TSA provides federal benefits for local K-9 patrol officers who perform TSA duties, or the TSA employs K-9 officers who previously worked for local law enforcement and provides to those federal employees federal benefits that surpass the benefits offered to local law enforcement officers.[8] But there is no evidence before the Court

---

[7] *See TSA Canine Training Center*, TRANSPORTATION SECURITY ADMINISTRATION, https://www.tsa.gov/news/press/factsheets/tsa-canine-training-center (last visited May 19, 2021) ("TSA partially reimburses each participating agency for operational costs associated with maintaining the teams, including veterinary fees, handler salaries, dog food, and equipment.").

[8] *See TSA's National Explosive Detection Canine Program,* TRANSPORTATION SECURITY ADMINISTRATION (Dec. 9, 2020), https://www.tsa.gov/blog/2020/12/09/tsas-national-explosive-

to establish either option, and Officer Minnifield cannot overcome the City's motion for summary judgment without placing concrete facts in the record to create a factual dispute for a factfinder to resolve.

Because the summary judgment evidence has not changed, the law of the case dictates that that evidence does not suffice to create a jury question concerning adversity. Accordingly, by separate order, the Court will enter judgment for the City of Birmingham on Officer Minnifield's remaining Title VII claims because Officer Minnifield has not established a prima facie case of discrimination or retaliation.

**DONE** and **ORDERED** this May 25, 2021.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

---

detection-canine-program (last visited May 19, 2021) ("The Canine Training Center (CTC) is located at Joint Base San Antonio-Lackland in San Antonio, Texas. This site trains and deploys both TSA-led and state and local law enforcement-led canine teams. These teams, made up of a canine and a handler, support the day-to-day activities that secure and protect transportation environments."); *TSA Canine Training Center*, TRANSPORTATION SECURITY ADMINISTRATION, https://www.tsa.gov/news/press/factsheets/tsa-canine-training-center (last visited May 19, 2021) ("Law enforcement officers make up approximately 60 percent of the [canine] teams and approximately 40 percent are transportation security inspectors.").